UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>CARLOS SANCHEZ )<br>     Defendant ) | Criminal No. 04-10336-NMG |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Michael J. Sullivan, United States Attorney for the District of Massachusetts, and William F. Bloomer, Assistant U.S. Attorney, submits its Sentencing Memorandum with respect to Carlos Sanchez ("Sanchez").[1]

**INTRODUCTION**

*Gram-for-gram, Sanchez received more heroin from Julio Santiago, who was the head of a massive heroin distribution enterprise operating in the Lowell / Fitchburg areas, than any other coconspirator. In less than one month's time, Sanchez ordered more than 1,000 grams of heroin from Santiago over Santiago's pager. Agents confirmed the delivery of the pager-ordered heroin through physical surveillance and data from a GPS attached to Santiago's mini van. At the conclusion of the investigation on October 15, 2004, agents found a bottle of procaine, which is used to dilute heroin in order to maximize profits, and $6,200 in cash, which Sanchez claimed he had withdrawn from an ATM despite having not worked for over three months.*

To determine a defendant's final sentence, this Court must follow the three-step sentencing approach espoused by the First Circuit.  United States v. Dixon, 449 F.3d 194, 204

---

[1] As this Court is aware, following a ten-day trial in October 2006, a jury returned guilty verdicts against five of the eleven codefendants in this case –Julio SANTIAGO, Juan NUNEZ, Carlos COLON (a/k/a Pedro MIRANDA), Jose RODRIGUEZ, and Carlos SANCHEZ -- with respect to Count One of the Superseding Indictment.  The jury also found Julio Santiago guilty of the firearms offenses set forth in Count Seven, namely, possession of firearms in furtherance of a drug trafficking crime, and possession of unregistered firearms, to wit: silencers, (Count Eight).  The jury further found that the conspiracy as a whole was responsible for more than 1,000 grams of heroin.  With the exception of Enrique AGOSTO, who was severed from his co-defendants for the purpose of trial, the remaining six codefendants have pleaded guilty.

(1st Cir. 2006); United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc); United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005). First, this Court must calculate the advisory guideline range. E.g., United States v. Pho, 433 F.3d 53, 61 (1st Cir. 2006). Second, the Court must determine whether any traditional departures apply to the case at hand. E.g., United States v. Saez, 444 F.3d 15, 17 (1st Cir. 2006). Finally, the Court needs to determine whether any factors put forth in 18 U.S.C. § 3553(a) offer a persuasive reason to impose a sentence outside of the proposed guideline range. E.g., Robinson, 433 F.3d at 35.

## ANALYSIS

According to the Presentence Report (PSR), Sanchez is a Criminal History Category I. (PSR ¶¶ 145-146). Being responsible for between one and three kilograms of heroin, his Base Level Offense is 32. (PSR ¶¶ 131-141). Because no other departures apply, Sanchez's Total Offense Level (TOL) is 32 and his Guideline Sentencing Range (GSR) is 121 to 151 months. (PSR ¶¶ 134-141, 177).[2] He faces a statutory mandatory minimum of 10 years' imprisonment. (PSR ¶ 175).

The government recommends a period of 144 months' incarceration to be followed by a term of 5 years' supervised release. Given the factors set forth in 18 U.S.C. §3553(a), imposing the minimum possible sentence (10 years or 121 months) would clearly send the wrong message to others given the nature and gravity of the defendant's offense. To reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence and to protect the public, a term of 12 years' incarceration is reasonable, United

---

[2] The defendant has not satisfied criterion 5 of U.S.S.G. § 5C1.2, and therefore is not safety-valve eligible.

States v. Jiminenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006)(en banc).

      **A**      **Importance of the Guideline Range.**

Even though the guidelines are advisory, the First Circuit has ruled that the guidelines remain a central component of any sentencing post-Booker. Jiménez-Beltre, 440 F.3d at 518; see also United States v. Kandirakis, No. 04-10372-WGY, 2006 WL 2147610, at *10 (1st Cir. August 1, 2006) (stating "the Guidelines - and their judge-made factual findings - are still the driving force behind federal sentencing"). The First Circuit explained that the "guidelines remained 'an important consideration' because they represented the only 'integration of the multiple factors' identified in the statute, often reflected past practice, and bore the imprimatur of the [Sentencing Commission] expert agency charged with developing them." United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006), quoting Jiménez-Beltre, 440 F.3d at 518. The continuing importance of the guidelines is such that the more the judge's sentence differs from the advisory guideline range - either higher or lower - the more compelling the judge's justification must be for the atypical sentence. See Kandirakis, 2006 WL 2147610, at *11; United States v. Thurston, No. 05-2271, 2006 WL 2065404, at *4 (1st Cir. July 26, 2006); Smith, 445 F.3d at 4.

The importance of the final guideline range has nothing to do with the guidelines' former mandatory status, which was eliminated in Booker. Instead, reasonableness is judged in relation to the guidelines for three reasons adopted by the First Circuit in United States v. Jiménez-Beltre: (1) only the guidelines comprehensively examine the full panoply of sentencing considerations; (2) the guidelines represent decades of nationwide experience and study; and (3) they are the only measure for avoiding unwarranted sentencing disparities. See 440 F.3d at 518. Congress explicitly created the Sentencing Commission and guidelines to achieve these

ends.  Id.

The continued adherence to the now advisory guidelines remains evident in appellate courts across the country.  While courts have repeatedly reversed as unreasonable sentences outside the applicable guideline ranges,[3] reversals of sentences imposed within the guideline range have been extraordinarily rare.  Kandirakis, 2006 WL 2147610, at *43 n.36; see also United States v. Cooper, 437 F.3d 324, 331 (3d Cir. 2006) ("[I]t is less likely that a within-guidelines sentence, as opposed to an outside-guidelines sentence, will be unreasonable"); United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005) ("[I]t will be rare for a reviewing court to say [a within-Guidelines sentence] is 'unreasonable.'").  Indeed, in the post-Booker era, only one within-guidelines sentence has been found blatantly unreasonable.  United States v. Lazenby, 439 F.3d 928, 933 (8th Cir. 2006) (sentence based on comparison to co-defendant's sentence found unreasonable).  Furthermore, just two additional sentences have been reversed where the appellate court determined that the district court judge failed to provide an adequate explanation of the within-guidelines sentence.  United States v. Carty, 453 F.3d 1214 (9th Cir. 2006); United States v. Vonner, 452 F.3d 560 (6th Cir. 2006).  Moreover, the First Circuit and its sister circuits have emphasized that the further outside the range, either above or below, a sentence falls, the stronger must be the justification for such disparate sentencing.

Here, the record – in the form of evidence introduced at trial and the reliable information

---

[3]See, e.g, Zapete-Garcia, 447 F.3d at 60 (holding that defendant's forty-eight month sentence – eight times the maximum of the advisory sentencing guideline range – was unreasonable as the district court failed to provide a reason for such a mammoth variance and neither defendant's prior deportations or arrest justified the increase); Smith, 445 F.3d at 5-6 (finding that defendant's forty-six month sentence – less than half the minimum advisory guideline range – for six counts of crack distribution and one count conspiring to sell narcotics was unreasonable as the defendant's minor role was taken into account in the guideline calculation and the defendant had previously sold narcotics near schools, violated post-arrest release terms, and had no better than usual rehabilitation prospects).

set forth in the PSR – clearly supports the finding that Sanchez was responsible for between one and three kilograms. (PSR ¶¶ 50, 85, 91-93, ¶ 96-97, 105).  See United States v. Panet-Collazo, 960 F.2d 256 (1st Cir. 1992) ("We review a trial court's findings of fact under the Sentencing Guidelines only for clear error").  Probation agrees.  (¶¶132-134).

Though largely academic, the government submits that SANCHEZ is responsible for a minimum of 1,120 grams of heroin as opposed to the 1,070 gram finding by Probation (¶ 132). The government bases its calculations on the following.

The sum total of the entries set forth in ¶ 105 of the PSR (the Pager Intercepts and GPS Table) is 1,200 grams of heroin (omitting apparent duplicative pages as well as the order on 9/19/04 which was not followed by surveillance taking Santiago's van to Sanchez's residence at 270 Fairmont Street in Fitchburg) .  However, SANCHEZ amended his 250-gram request on October 7, 2004, to 20 grams when he called SANTIAGO and said,  "son of a bitch . . . it's the two."  SANTIAGO indicated that he did not understand and asked if "the two guys are going there" which SANCHEZ then confirmed.  Therefore, the correct total of heroin attributable to SANCHEZ solely from pager-related interceptions is 970 grams.

That 970 gram amount, however, is supplemented by telephone interceptions in which SANCHEZ ordered additional amounts of heroin from SANTIAGO.  First, on June 6, 2004, a call was intercepted during which Carlos SANCHEZ ordered 100 grams of heroin by means of the coded comment, "I need one hundred flans [custard pies]."  Agents established surveillance at 270 Fairmont Street, Fitchburg, that afternoon and observed SANTIAGO arriving in the area in his minivan.  SANTIAGO exited his van and entered the residence carrying a coffee cup (not 100 custard pies).  He remained inside for a brief period of time before departing the area in his

vehicle.

Second, on September 2, 2004, after assuring SANTIAGO that he did not find another supplier (stated in code that he did not "fall in love elsewhere"), SANCHEZ ordered "50 little pesos" for "the cousin only."  As described in ¶ 86 of the PSR, this conversation took place on the same date and at the same time that SANTIAGO was headed to COLON's residence at 212 Wilder Street to process and deliver heroin to RODRIGUEZ, TORREZ, and TORRADO, while COLON performed counter surveillance in the driveway.    Probation does not include this 50-gram amount in its calculation. Thus, even adopting a conservative posture, Carlos SANCHEZ is responsible for a minimum of 1,120 grams of heroin (not 1,070 grams of heroin).  Either way, it would not be clear error to find by a preponderance of the evidence that Sanchez was responsible for between one and three kilograms of heroin based on this record.

  **B.** **Application of the § 3553(a) Factors.**

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing.  Section 3553(a)(4) and (5) specifically direct the Court to consider the applicable guidelines, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing, which, as explained above, is best accomplished through faithful application of the guidelines.  The other 3553(a) factors also point to this conclusion.  While all § 3353(a) factors must be considered by this Court, "it is not required to address those factors, one by one, in some sort of rote incantation when explicating its sentencing decision."  Dixon, 449 F.3d at 205; see also United States  v. Navedo-Concepcion, 450 F.3d 54, 57-58 (1st Cir. 2006) (reasoning that in every decision the main factors contributing to the sentence must be identified by the sentencing court, but there is no "requirement for a lengthy or detailed recitation or one addressing every

claim and counter-argument; rather, the reviewing court needs, and both parties deserve, a *specific* explanation and not just a reference to the evidence.").

Sanchez is a healthy 24-year-old male. (PSR ¶¶160). He denied having any mental or emotional problems and does not feel the need for psychological assistance (PSR ¶161). He was a daily user of marijuana, but has ceased using since his incarceration. (PSR ¶¶ 162-163). Although he has limited education (PSR ¶164), he claims to have supported himself through regular employment over the years. (PSR ¶¶ 166-169).

In short, the PSR reflects nothing unusual or extraordinary in Sanchez's background to justify taking him outside of the heartland of cases already addressed by the Sentencing Guidelines. C.f., Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035, 2047 (1996) ("[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline").

Sanchez chose to inject a massive amount of heroin into the Greater Fitchburg community. The amount of pain, addiction, and crime that he, Santiago and his co-conspirators have contributed to is incalculable. Nothing should steer him outside the federal sentencing guideline range. See United States v. Thurston, No. 05-2271 (1st Cir. July 26, 2006) (discussing Congressional goal of promoting national uniformity in sentencing).

**C. Sentence**

The government recommends a term of 144 months' imprisonment with 5 years' supervised release. In light of the massive quantity of heroin that the defendant is accountable for, the government's recommendation is reasonable, United States v. Jiminenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006)(en banc), and in accord with the overarching principles and

policies expressed and incorporated in the Sentencing Guidelines.

RESPECTFULLY SUBMITTED
MICHAEL J. SULLIVAN
United States Attorney

By:    */s/ William F. Bloomer*
         WILLIAM BLOOMER
         Assistant U.S. Attorney
         BBO#553104
         william.bloomer@usdoj.gov
         (617) 748-3644

## CERTIFICATE OF SERVICE

I, William F. Bloomer, hereby certify that this document filed through the ECF system on March 26, 2007, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/William F. Bloomer*
WILLIAM F. BLOOMER

Date: 26 March 2007